(84 Misc. Rep. 599)

### UNION ESTATES CO. v. ADLON CONST. CO. et al.

#### (Supreme Court, Special Term, New York County. March, 1914.)

1. DAMAGES (§ 79*)—PENALTY—AGREEMENT TO PAY INCREASED RATE OF INTEREST.

    Where a corporation executed a bond and mortgage to secure a building loan providing for interest at 6 per cent., and also executed a contemporaneous collateral agreement, providing that, if the mortgage was not paid at maturity, the mortgagor would pay additional interest at the rate of 17 per cent. per annum on any sums remaining unpaid from maturity until paid, the collateral agreement would not be construed as modifying the terms of the mortgage, but as a contract for a penalty, so that, on foreclosure, the mortgagee would only be limited to a judgment for the principal debt, with interest at 6 per cent.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

2. DAMAGES (§ 125*)—NONPAYMENT OF MONEY—INTEREST.

    The damages flowing from nonpayment of money must be measured by the legal rate of interest, whether the party in default be an individual or a corporation.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 339–343; Dec. Dig. § 125.*]

3. DAMAGES (§ 125*)—PENALTY—BREACH OF CONTRACT—INTEREST.

    While the law withdraws from a corporation the defense of usury, it does not establish a different rule of damages on breach of the corporation's contract to pay money, so as to authorize an assessment of more than 6 per cent. interest.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 339–343; Dec. Dig. § 125.*]

Suit by the Union Estates Company against the Adlon Construction Company and others, to foreclose a building loan mortgage. Judgment for complainant for less than the relief demanded.

Eisman, Levy, Corn & Lewine, of New York City (Louis F. Levy and Joseph J. Corn, both of New York City, of counsel), for plaintiff.

Weed, Henry & Meyers, of New York City (John W. Weed, Charles Meyers, and J. Charles Weschler, all of New York City, of counsel), for defendants.

Anderson, Iselin & Anderson, of New York City (Outerbridge Horsey, of New York City, of counsel), for Frazee Realty Co. and Harry H. Frazee.

GREENBAUM, J.   This action is brought to foreclose a building loan mortgage given to the plaintiff corporation to secure the repayment of $70,000 and interest thereon, evidenced by the bond of the mortgagor, the defendant Frazee Realty Company, a corporation. The bond and mortgage by their terms provide for interest at the rate of 6 per cent. per annum.   The differences between the parties arise out of a collateral agreement executed contemporaneously with the bond and mortgage in suit.

[1] This collateral agreement, so far as material to the discussion, provides as follows:

    " * * * Said party of the first part (the mortgagor) covenants and agrees that in the event that said mortgage shall not be paid on said 8th day of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

October, 1912, the party of the first part will, in addition to interest at the rate of 6 per cent. per annum provided for in said mortgage, pay additional interest at the rate of 17 per cent. per annum upon any sums remaining unpaid upon said bond and mortgage from October 8, 1912, until the day when said mortgage and its accompanying bond shall be fully and actually paid. * * * Nothing herein contained shall be construed as obligating the party of the second part (the mortgagee), its successors or assigns, to extend the payment of said mortgage beyond said October 8, 1912, or as limiting the right to foreclosure or take any other steps whatsoever in connection with said bond and mortgage upon a default in any of the terms, covenants, and conditions of said bond and mortgage for $70,000."

· The question at issue is whether the plaintiff mortgagee may collect as interest, in addition to the interest at the rate of 6 per cent., as provided for in the bond and mortgage, interest at the rate of 17 per cent. per annum computed from October 8, 1912, the date upon which the principal sum and interest secured by the mortgage is payable, and, if collectible, whether this additional 17 per cent. interest is secured by the mortgage and therefore a lien upon the premises therein described. It is conceded by all parties that the mortgagor, being a corporation, may not interpose the defense of usury. The defendants contend that the additional interest contemplated by the collateral agreement is a penalty and therefore not recoverable. The plaintiff's counsel most strenuously argues that the provision for additional interest at the rate of 17 per cent. from the date of maturity of the principal obligation is to be treated as increasing the rate of interest on the principal sum to 23 per cent., made up of the 6 per cent. fixed in the bond and mortgage and the additional interest of 17 per cent., and that, since the defense of usury may not be urged by the mortgagor, the increased rate of interest is a "lawful," as distinguished from a "legal," rate of interest. The solution of the problem presented depends upon the correct interpretation of the so-called collateral agreement, which, under the canons of construction, should be read in conjunction with the bond and mortgage and the circumstances attendant upon the execution of the several instruments. The bond and mortgage were executed on July 11, 1912, under a building loan agreement, and the loans were to be repaid on October 8, 1912, with interest at the rate of 6 per cent. It was contemplated that this building loan was to be replaced by a permanent loan upon the completion of the building to be erected by the mortgagor. It is thus evident that time of the repayment of the loans was strictly of the essence of the contract, and that the provision for 17 per cent. additional interest was embodied in the collateral agreement to insure or stimulate the prompt payment of the principal sum and interest at the rate of 6 per cent. One is impressed at the outset with the fact that the bond and mortgage make no mention of an additional payment of 17 per cent. interest, and that the collateral agreement specifically provides:

"That in the event that said mortgage shall not be paid on said 8th day of October, 1912, the party of the first part (mortgagor) will, in addition to interest at the rate of 6 per cent. per annum, pay additional (sic) interest at the rate of 17 per cent. per annum upon any sums remaining unpaid upon said bond and mortgage from October 8, 1912, until the date when said mortgage and its accompanying bond shall be fully and actually paid."

The "additional interest at the rate of 17 per cent." is to be paid up-
on "any sums remaining unpaid upon said bond and mortgage from
October 8, 1912," thus evidencing an intention to treat the principal
and interest at the rate of 6 per cent. independently of the "additional
interest" at the rate of 17 per cent. It is not stated that the interest on
the principal sum shall, from October 8, 1912, be at the rate of 23 per
cent. instead of 6 per cent., as provided for in the bond and mortgage.
It may not be assumed that this additional interest of 17 per cent. is
to be paid in consideration of forbearance or an indefinite extension of
the time of payment of the principal after October 8, 1912, since
it is expressly provided in the collateral agreement that nothing there-
in contained "should be construed as extending the time of payment
of the mortgage." The collateral agreement does not purport to mod-
ify the terms of the original bond and mortgage. It was evidently
made with knowledge of the rule recognized in this state that, where a
contract fixes the rate of interest upon money up to the time of de-
fault, the interest after maturity is awarded as damages and is comput-
ed according to the rate prescribed by law (O'Brien v. Young, 95 N.
Y. 428, 47 Am. Rep. 64), and it doubtless was intended to overcome
the effect of the rule of damages, measured by the legal or statutory
rate of interest, by providing for the additional payment of interest
at the rate of 17 per cent. upon the theory that such a rate was law-
fully enforceable in the case of a corporation mortgagor which could
not plead usury. It seems reasonable to infer that it was the intention
of the parties that the additional interest of 17 per cent. was the
amount fixed by way of damages to be paid by the mortgagee "in the
event" of the "nonpayment of the principal sum and interest at the
rate of 6 per cent. per annum on October 8, 1912." The provision for
this additional interest in the collateral agreement being by way of
damages, it is only necessary to determine whether it is to be consider-
ed as one for liquidated damages or as a penalty. If the latter, it is
unenforceable.

In Bispham's Equity, §§ 178, 179, the rule for determining whether
the damages agreed upon are to be deemed liquidated is stated as fol-
lows:

"When the injury is susceptible of definite admeasurements, as in all cases
where the breach consists in the nonpayment of money, the parties will not
be allowed to make a stipulation for a greater amount, whether in the form
of a penalty or of liquidated damages."

And in Curtis v. Van Bergh, 161 N. Y. 47, 52, 55 N. E. 398, 400,
the rule is thus stated:

"The amount is to be deemed liquidated damages when the actual damages
contemplated at the time the agreement was made 'are in their nature uncer-
tain and unascertainable with exactness, and may be dependent upon extrinsic
considerations and circumstances, and the amount is not, on the face of the
contract, out of all proportion to the probable loss.'"

[2] Tested by these rules, it inevitably follows that the damages in
the case at bar that would result from the nonpayment of money on
the due date being susceptible of definite measurement by the payment
of interest at the legal rate, the amount of damages at the additional

147 N.Y.S.—50

rate of 17 per cent. must be regarded as a penalty and not as liquidated damages, and hence unenforceable. The law applicable to this case seems to be appropriately summed up in the language of Lord Chancellor Hatherly in Thompson v. Hudson, L. R. (4 H. L.) 1, as follows:

"I take the law to be perfectly clear upon these matters, which we have to consider with reference to this and the subsequent agreements, namely, that where there is a debt actually due, and in respect of that debt security is given, be it by way of mortgage or be it by way of stipulation, in case of its not being paid at the time appointed, a larger sum shall become payable and be paid; in either of these cases equity regards the security that has been given as a mere pledge for the debt, and it will not allow either a forfeiture of the property pledged or any augmentation of the debt as a penal provision on the ground that equity regards the contemplated forfeiture, which might take place at law with reference to the estate, as in the nature of a penal provision, against which equity will relieve when the object in view, namely, the securing of a debt, is attained, and regarding also the stipulation for the payment of a larger sum of money, if the sum be not paid at the time it is due, as a penalty and a forfeiture against which equity will relieve."

The learned counsel for the plaintiff cites authorities in this and other states where extension agreements providing for rates of interest greater than the rate fixed in the original obligation were upheld. But these cases are in entire harmony with the views herein expressed. The agreements of extension of payment afforded an adequate consideration for an increase of the rate of interest, which in every one of the cases cited was within the legal rate of the state wherein the controversy arose. Not one of these cases permitted damages for nonpayment on the due date at a greater rate of interest than the legal rate. It also seems to me that, where the statute fixes the legal rate of interest, the damages flowing from nonpayment of money must be measured by the legal rate, whether the party in default be an individual or a corporation.

[3] The law simply withdraws from a corporation the defense of usury with its attendant consequences of forfeiture of the principal and interest, but it does not thereby establish a different rule of damages upon the breach of a contract by a corporation than by an individual. A judgment of foreclosure for the amount of the principal debt, with interest thereon at the rate of 6 per cent., is decreed.

Judgment accordingly.